**WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Fresno, California  93720
Telephone:   (559) 233-4800
Facsimile:    (559) 233-9330

Michael S. Helsley #199103
Patrick D. Toole #190118
Dylan J. Crosby #299536

Attorneys for:       Plaintiffs and Proposed Class Representatives BECKY GREER,
TIMOTHY C. BUDNIK, ROSARIO SAENZ and IAN CARTY

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECKY GREER; TIMOTHY C. BUDNIK; ROSARIO SAENZ; and IAN CARTY, Individually and as "Class Representatives," <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC GAS AND ELECTRIC COMPANY, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs Becky Greer ("Greer"), Timothy C. Budnik ("Budnik"), Rosario Saenz ("Saenz") and Ian Carty ("Carty") (collectively "Plaintiffs"), as individuals, on behalf of themselves and all others similarly situated, complain of Defendant Pacific Gas and Electric Company ("PG&E" or "Defendant") and each of them, as follows:

### I.

### <u>INTRODUCTION</u>

1.      This is a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of Plaintiffs and all individuals who hold or held the position of "Customer Service Representative I" currently employed by or formerly employed by Defendant Pacific Gas and

///

Electric Company and any subsidiaries or affiliated companies and Does 1 through 50 within the State of California over the last four (4) years.

2.     From at least four (4) years prior to the filing of this action continuing to the present, Defendant has had a consistent policy of failing to pay all wages owed to all "Customer Service Representative I" personnel for all work performed at the proper rate of compensation.

3.     From at least four (4) years prior to the filing of this action, Defendant had the policy and practice of falsely advertising wages on its website for the position of Customer Service Representative I.

4.     From at least four (4) years prior to the filing of this action continuing to the present, Defendant has had a consistent policy and practice of failing to abide by the clear terms of the International Brotherhood of Electrical Workers' Collective Bargaining Agreement and with California Labor Code Section 2014(a) with regard to paying its employees all wages due.

5.     From at least four (4) years prior to the filing of this action continuing to the present, Defendant has had a consistent policy and practice of failing to apply the Clerical Hiring Rate Guidelines in a clear, consistent and equal manner to all Service Representative I personnel.

6.     From at least four (4) years prior to the filing of this action continuing to the present, Defendant has had a consistent policy and practice of knowingly failing, pursuant to the Clerical Hiring Rate Guidelines, to give those Service Representative I personnel with at least 18 months of directly related clerical job experience higher initial wage placement.

7.     From at least four (4) years prior to the filing of this action continuing to the present, Defendant has had a consistent policy of defrauding Plaintiffs and Proposed Class members by causing them to believe that they will receive settlement payouts based on retroactive raises they are owed for work performed based on their prior "directly related clerical job experience."

///

## II.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 185(a).  This Court also has supplemental jurisdiction over this action based on 28 U.S.C. section 1367(a).

9.    Venue is proper in this District pursuant to 28 U.S.C. section 1391(b).

## III.

## PARTIES

**A.    Plaintiffs**

10.    Plaintiff Becky Greer resides in Fresno, California.  Plaintiff is a current employee of Defendant working in the Fresno, California, Contact Center.

11.    Plaintiff Timothy C. Budnik resides in Fresno, California.  Plaintiff is a current employee of Defendant working in the Fresno, California, Contact Center.

12.    Plaintiff Rosario Saenz resides in Gilroy, California.  Plaintiff is a current employee of Defendant working in the San Jose, California, Contact Center.

13.    Plaintiff Ian Carty resides in Fresno, California.  Plaintiff is a current employee of Defendant working in the Fresno, California, Contact Center.

14.    Plaintiffs and all similarly situated Customer Service Representative's with directly related clerical job experience were regularly required to perform the same job functions at a lower rate of pay than either promised by Defendant during the hiring process and/or as identified in the Collective Bargaining Agreement between Defendant and Plaintiffs.

**B.    Defendant**

15.    Defendant Pacific Gas and Electric Company is a corporation organized and existing under the laws of the State of California and maintains its principal place of business in San Francisco, California. Defendant is or was an employer whose employees are and were engaged throughout the State of California.

16.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants used herein as DOES 1 to 10, inclusive, are currently unknown to

CLASS ACTION COMPLAINT

1  Plaintiffs who therefore sue Defendants by such fictitious names.  Plaintiffs are informed and

2  believe, and based thereon allege, that each of the Defendants designated herein as DOE is

3  legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek

4  leave of court to amend this Complaint to reflect the true names and capacities of the

5  Defendants designated hereinafter as DOES when such identities become known.

6          17.     Defendants PG&E and DOES 1 through 10 (collectively referred to

7  herein as either "Defendants" or "PG&E"), are and at all times alleged herein were "persons"

8  as defined in California Business & Professions Code section 17201.

9          18.     Plaintiffs and Proposed Class are ignorant of the true names, identifies,

10  capacities and relationships of the Defendants sued herein as DOES 1 through 10, inclusive,

11  and therefore sue these Defendants by such fictitious names.  Plaintiffs and Proposed Class are

12  informed and believe, and thereon allege, that each of these fictitiously named Defendants are

13  responsible in some manner for the occurrences herein alleged, and that Plaintiffs' and the

14  Proposed Class' harm, injury, detriment and damages as herein alleged were proximately

15  caused by DOES 1 through 10.  Plaintiffs and Proposed Class will amend this Complaint to

16  allege the true names and capacities of said DOE Defendants when such information is

17  ascertained.  Each reference to "Defendants," and each reference to any particular Defendant

18  herein, shall be construed to refer to all of those fictitiously named herein as "DOE"

19  Defendants, and each of them.

## IV.

## GENERAL ALLEGATIONS

22          19.     Defendant Pacific Gas and Electric Company, incorporated in California in

23  1905, is one of the largest combination natural gas and electric utilities in the United States.

24  Throughout the Class Period, defined as the four (4) years preceding the filing of this Action,

25  Defendants employed persons within the meaning of California Industrial Welfare

26  Commission ("IWC") Wage Orders, NUMBERS 1-2001 THROUGH 17-2001, and MW-2014

27  and its predecessors, which are codified in California Code of Regulations ("CCR"), Title 8,

28  Sections 11010 through 11170 (hereinafter collectively referred to as "the Wage Order").

20.     Plaintiffs and Proposed Class are, and at all times pertinent hereto have been classified as non-exempt, hourly employees by Defendant.   During the Class Period, Defendants recruited, solicited, hired and employed and furnished employment, and were employers pursuant to the Wage Order.   Though the Proposed Class worked under various IWC Wage Orders at different times, for the purposes of the claims asserted in this lawsuit, the IWC Wage Orders contained identical provisions regarding exemptions, minimum wages, overtime and employer's obligation to compensate workers for any hours they are "suffered or permitted to work, whether or not required to do so."   Consequently, the terms of the various IWC Wage Orders applicable to the Proposed Class for work performed during the Class Period contain no significant variance with respect to the facts, circumstances and legal theories alleged herein.

21.     Defendant hired Plaintiffs and Proposed Class who work or worked as "Customer Service Representative I" to handle customer service inquiries and problems via telephone, internet, or written correspondence.

22.     Throughout the Class Period, Defendants, and each of them, have directly or indirectly or through an agent or representative exercised control over the wages, hours and/or working conditions of Plaintiffs and the Proposed Class and engaged, suffered and/or permitted Plaintiffs and the Proposed Class to work.

23.     Throughout the Class Period, Plaintiffs and Class Members were employees under the California Labor Code and were non-exempt from the protections of the provisions of the Labor Code referenced herein and from the protections of the Wage Order.

***Customer Service Representative I Hiring Process***

24.     Defendant posted job openings within its company or on its company website, including those for "Customer Service Representative I."

25.     Defendant's job postings for Customer Service Representative I advertised an entry level hourly wage of $23.88 per hour.

///

///

26.     Applicants who saw the posting reasonably believed and relied on the statement that their starting hourly wage would be, at a minimum, $23.88 per hour and commensurate with their professional experience.

27.     Plaintiffs and Proposed Class, relying on the Defendant's representations of the Customer Service Representative I hourly wage and benefits completed Defendant's online application for the positions.

28.     Defendant's online application questioned applicants regarding their customer service experience, but did not specifically ask whether applicants had call center experience.

29.     Plaintiffs and Proposed Class all had previous experience ranging from at least six (6) months of customer service experience to greater than two (2) years experience.

30.     Applicants, including Plaintiffs and Proposed Class, still under consideration after their online application were required by Defendant to complete a basic skills test (Clerical Test Battery), which tested basic math, reading, and personality.  Plaintiffs and Proposed Class, relying on Defendant's representations regarding the position's wage and benefits, completed the Clerical Test Battery.

31.     Defendant then required remaining applicants, including Plaintiffs and Proposed Class, to complete a phone interview with a PG&E employee. Plaintiffs and Proposed Class, relying on Defendant's representations regarding the position's wage and benefits, completed the phone interview.

32.     Defendant then required remaining applicants, including Plaintiffs and Proposed Class, to complete an in-person interview before a panel of three (3) PG&E interviewers, which included a mock phone call to test customer service skills as well as situational interview questions. Plaintiffs and Proposed Class, relying on Defendant's representations regarding the position's wage and benefits, completed the in-person interview.

33.     Plaintiffs and Proposed Class were subsequently offered positions at PG&E as Customer Service Representative I personnel at various Contact Centers.  First, Plaintiffs and Proposed Class were notified of the offer of employment by telephone call.  During that call Plaintiffs' and the Proposed Class were notified that instead of being paid the advertised hourly

wage of $23.88, the rate of pay was actually $18.36 per hour.  The difference is $5.52 (or over 20%) less than promised and reasonably relied on by Plaintiffs and the Proposed Class. However, Plaintiffs and the Proposed Class were told that higher rates of pay would apply based on previous experience.

34.  Second, the verbal offer of employment was followed up in a writing by way of email or letter to Plaintiffs and the Proposed Class.  In each of the writings, Defendant stated the hourly rate of "$18.76 per hour."  However, the writings also made further, and false, representations that higher rates of pay were available to those who satisfy the criteria described as the Clerical Hiring Rate Guidelines for Service Representative I Personnel.

35.  Plaintiffs and Proposed Class were encouraged to accept the "offer" on the spot, and in no case were Plaintiffs and the Proposed Class given more than 24 hours to decide whether or not they would take the position.

36.  Plaintiffs and Proposed Class had no bargaining power once offered their position, they were pressured to accept the offer immediately.  Plaintiffs and Proposed Class, after such exhaustive efforts to obtain their offers of employment, and feeling pressure from the offerors, accepted their positions with Defendant despite the lower wage because, based on the oral and written representations of Defendant, they expected their pay to be adjusted according to their experience and in accordance with the Clerical Hiring Rates Guidelines.

***Clerical Hiring Rate Guidelines for Service Representative I Personnel***

37.  Plaintiffs and Proposed Class's expectations that their pay would be adjusted according to their experience were based on oral and written representations of Defendant, including the employment offer letters stating:  "Your base salary may be increased as detailed in the International Brotherhood of Electrical Workers (IBEW) Collective Bargaining Agreement."

38.  The IBEW Collective Bargaining Agreement contains "Clerical Hiring Rate Guidelines," which state, in no uncertain terms, that: "The following hiring rate guidelines apply to clerical employees hired under the Agreement:

///

1.)  An employee with less than 6 months of directly related clerical job experience will be hired at the starting rate of the applicable clerical classification. An employee with 6 months, but less than 12 months directly related clerical job experience, will be hired at the 6-month rate of the applicable clerical classification. An employee with 12 to 18 months directly related clerical job experience, will be hired at the one-year rate of the applicable clerical classification. An employee with 18 to 24 months directly related clerical job experience, shall be hired at the 18-month rate of the applicable clerical classification. An employee with 18 to 24 months directly related clerical job experience, shall be hired at the 18-month rate of the applicable clerical classification. An employee, other than Utility Clerk, with 2 years or more directly related clerical job experience, shall be hired at the 24-month rate of the applicable clerical classification. A Utility Clerk with 24 to 30 months directly related clerical job experience, shall be hired at the 24-month rate of the Utility Clerk. A Utility Clerk with 30 months directly related job experience, shall be hired at the 30-month rate of the Utility Clerk."

39.    Plaintiffs and Proposed Class members with experience above and beyond the $18.36 pay grade.  As such, Plaintiffs and the Proposed Class reasonably expected that their hourly wage would be raised commensurate with their experience to at least the higher rate of $23.88 an hour.

40.    The cover letter to the IBEW Collective Bargaining Agreement, written by Stephen A. Rayburn, Director and Chief Negotiator, Labor Relations for Defendant, further provided explicit wage steps for Service Representative I personnel in 2011:

| | |
|---|---|
| "Start | $18.00 |
| End 18 Mo | $22.50 |
| End 3 Yr | $27.00 |
| End 54 Mo. | $ 34.78" |

This amount was to increased by two percent (2.0%) each year through December 31, 2014.

41.    Plaintiffs and Proposed Class subsequently worked for Defendant, fulfilling their duties as Customer Service Representatives I.

///

///

42.     Defendant intentionally and willfully disregarded the language of the Collective Bargaining Agreement and its decision-making personnel did not hire or raise Plaintiffs and Proposed Class's wages commensurate with their experiences.

43.     On November 24, 2013, Doug Veader, Chairman of the Review Committee, Director of Labor Agreements for Defendant, and F.E. (Ed) Dwyer, Jr., Secretary of the Review Committee, of IBEW, issued a letter entitled "Pre-Review Committee Number 21052 Customer Care—Contract Center Operations –Various Locations," sent to Chris Diamond of PG&E and Arlene Edwards of IBEW. This letter was disseminated to Plaintiffs and the Proposed Class at a later date. The subject of this grievance was the application of the Clerical Hiring Rate Guidelines to the Service Representative I classification, already reproduced above. In relevant part, the letter stated:

> "The Clerical Hiring Rate Guidelines of Exhibit A provide for the hiring of employees with 'directly related clerical job experience' at other than the starting wage rate for certain entry level classifications. When the Service Representative I Classification was negotiated, the parties agreed that the Hiring Guidelines were applicable.
>
> "At the time this grievance was filed, the Contact Center management was defining 'directly related clerical job experience' as having held the Customer Service Representative classification at PG&E within the previous 12 months, and with at least 18 months of PG&E Contact Center work experience. Only individuals who met those criteria would be placed at the 18 month wage step.
>
> "Discussion[:] The Committee agrees that the definition which was being used at the time of this grievance did not comply with the Hiring Guidelines. Limiting credit to PG&E Contact Center experience within the last 12 months is more restrictive than the agreed to language in Exhibit A. The Guidelines were never intended to limit prior experience to only prior PG&E experience. Also, the guidelines specify that credit will not be given for jobs held prior to a give year break, and do not limit credit for work within the past 12 months.
>
> "While Exhibit A does provide some guidance, it does not clearly define what constitutes 'directly related clerical job experience'. The intent of the language is to provide higher initial wage placement for individuals who bring directly related experience

and knowledge which allows them to perform at a more experienced (and higher paid) level of work….

"During the processing of this grievance, the Call Center management revised its criteria of directly related clerical experience to include: 'Customer service work in a call center environment where the nature of the work and complexity of the billing, systems, and rules is comparable to that at a PG&E Contact Center…

"Employees who are hired into the Service Representative I classification within 18 months or more of verifiable work experience as defined above should be placed at the 18 month rate step.

"As guidance in the application of the Exhibit A Hiring Rate Guidelines, the Committee discussed examples of job experience which would or would not be considered as directly related. The Committee did not include examples of job experiences which are specifically excluded from consideration under the guidelines (e.g. non-clerical, retail sales, and banking). The examples assume at least 18 months of the verifiable work experience, which did not precede a five-year break in employment, and *are not intended to be all inclusive*

"AT&T Call Center Customer Service Representative responsible for answering customer requests or inquiries concerning services, products, billing, and usage. Explaining customer's bill and recommending rate plans based on customer's usage, and establishing payment arrangements within established guidelines.

"Comcast Call Center Customer Service Representative responsible for answering customer requests or inquiries concerning services, products, billing, and usage. Explaining customer's bill and recommending rate plans based on customer's usage, and establishing payment arrangements within established guidelines.

"The above examples are considered as directly related as the nature and extent of the work and complexity of the billing, systems, and rules are comparable to that at a PG&E Contact Center." [emphasis added]

44.     Until November of 2013, when a grievance was filed by Customer Service Representative I personnel, by Defendant's own admission, Defendant's Contact Center

management, where Plaintiffs and Proposed Class worked, had uniformly defined "directly related clerical job experience" as having held a Customer Service Representative classification with Defendant within the previous 12 months and having at least 18 months of PG&E contact work experience to be placed at the 18 month wage step.

45.     Based on the information provided by the grievance, Plaintiffs and Proposed Class, on information and belief, reasonably believe that a small number of Customer Center management officers were making executive decisions with regard to how much Plaintiffs and Proposed Class would be paid without regard to the actual evidence of experience of each person.  In other words, Defendant has a "predetermined" amount of money to spend and "pre-selected" persons to receive that money in an arbitrary and capricious manner.

46.     The Pre-Review Committee letter, quoted above, remanded remaining disputes to the Local Investigating Committee for Resolution.

47.     Plaintiffs and Proposed Class were not informed of the November 2013 grievance until December 15, 2014.  On that day, Scott Sanford, Senior Director of Customer Service for Defendant sent an email to Plaintiffs and Proposed Class, referencing the 2013 Pre-Review Committee letter and recognizing that certain other Customer Service Representative I personnel would have the same grievance as the subject of the November 2013 grievance. The message stated in relevant part:

> "With the 2011 Clerical Agreement, it was agreed to establish a new beginner's level classification: Service Representative I. The wage rate schedule for the classification consists of four steps: Starting, 18 months, 3-year and 54 months. The Clerical Hiring Guidelines of Exhibit A provided for the hiring of employees with 'directly related clerical job experience' to be hired in at a pay rate other than the starting wage rate. When the Service Representative I classification was negotiated, the Union, Senior Leadership, and our HR Partners agreed that the Hiring Guidelines were applicable.
>
> At the time the grievance was filed, the Contact Center management was defining 'directly related clerical job experience' as having held the Customer Service Representative classification at PG&E within the previous 12 months, and with at least 18 months of PG&E Contact Center work experience. Only

individuals who met this criteria, as communicated on the individual's resume/application, would be placed at the 18 month wage step. With the settlement, Call Center management revised its criteria of directly related clerical experience to include: 'Customer service work in a call center environment where the nature of the work and complexity of the billing, systems, and rules is comparable to that at a PG&E Contact Center. Such work experience would need to include identifying and resolving customer inquiries on all phases of customer service (i.e., service billing and credit)'. The Committee agreed that the revised application complied with the Hiring Guidelines and the intent as described above. The Committee noted that the last sentence comes directly from the Company/Union negotiated Benchmark Duty Statement 5066. Employees who are hired into the Service Representative I classification with 18 months or more of verifiable work experience as defined above should be placed at the 18 month wage step.

To settle the grievance, resumes of all employees hired from 1/1/2011 through 12/1/2014 were reviewed and considered jointly, between Company and Union, as outlined in PRC 21052 [the November 2013 grievance]. For purposes of the settlement the initial resume submitted with the application for hire was utilized for eligibility determination. And as a result of the review, only a limited number of candidates qualified under specific interpretation of relevant experience qualification standards outlined in PRC 21052. Those individuals will be addressed and their pay will be corrected as agreed to in the settlement, and all decisions regarding candidates hired during this time are final."

48. Plaintiff and Proposed Class members reasonably believed that Scott Sanford, cooperating with the Review Committee, had or will fairly and thoroughly review all resumes to make settlement payout decisions on behalf of Defendant.

49. Defendant, despite protestation by certain members of the Proposed Class with the required call center experience, did not consult any other sources of information in reviewing documents. PG&E did not interview any Customer Service Representative I personnel nor did it look at previous applicant records to ascertain the correct classification. Plaintiffs and Proposed Class, on information and belief, contend that Defendant destroyed the remainder of their application records.

50. Plaintiffs and Proposed Class, on information and belief, allege that Defendant subsequently "cherry-picked" through resumes, determining, without following-up with

Plaintiffs and Proposed Class, based on arbitrary terminology used in the reviewed resumes which employees did and did not qualify for the settlement payouts.

51.     In or about late-December 2014, PG&E issued settlement payouts to approximately thirty (30) Customer Service Representative I employees.

52.     After the initial settlement decisions and payouts, PG&E received complaints from other Customer Service I personnel who believed that they had been incorrectly denied their settlement payout based on their prior directly related clerical experience.  This outcry by PG&E Customer Service Representative I personnel led to a second review of resumes in April 2015.  At that time, Plaintiffs' allege in information and belief that an additional 100 settlement payouts were made in or around May 2015.

53.     In notifying Plaintiffs of PG&E's decisions, Scott Sanford, Defendant's Senior Director of Customer Service, wrote in May 2015 that "the decisions made by the union and company are final" and that no additional settlement payouts would be awarded.

54.     Defendant has refused Plaintiffs and Proposed Class members' attempts to file timely, additional grievances on May 29, 2015.  Accordingly, Plaintiffs and Proposed Class have exhausted all administrative remedies.

55.     During the Class Period, Defendants maintained and enforced a uniform policy by which they regularly and consistently failed to provide Plaintiffs and Proposed Class with complete and accurate itemized wage statements stating the total hours worked, gross wages earned, net wages earned, all applicable rates of pay and the corresponding number of hours worked under each rate, all deductions, and accurate accounting for all hours worked and wages paid to Plaintiffs and Proposed Class.  Defendants also failed to record in ink or other identifiable form all deductions from wages showing the month, day and year, and failed to keep a copy of the statements and records of deductions for three years at the place of employment or at a central location in the State of California.

56.     During the Class Period, Defendants maintained and enforced a uniform policy by which they regularly and consistently violated California Labor Code section 204 and the Wage Order by failing to pay Plaintiffs and Proposed Class for all hours worked.

57.     During the Class Period, Defendants maintained and enforced a uniform policy by which they regularly and consistently violated California Labor Code sections 201, 202 and 203 by failing to pay Plaintiffs and Proposed Class all unpaid wages within 72 hours after they voluntarily resigned their employment, or, when their employment was involuntarily terminated, immediately on their last day of employment.  If an employer willfully fails to pay an employee all unpaid wages within the requisite time period, the employer must pay the employee a penalty in the amount of up to 30 days wages, called "a waiting time penalty."

58.     At all times relevant herein, as a result of the aforementioned specific actions, Plaintiffs assert that Plaintiffs and the Proposed Class worked for Defendants without being paid all wages on time and without having been provided with complete and accurate wage statements as required by law.

59.     As a result of the aforementioned specific actions, Plaintiffs assert that Defendants had in existence a consistent and uniform policy of failing to provide Plaintiffs and Proposed Class compensation in full when due and payable for all hours worked in accordance with California law.

60.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and Proposed Class were entitled to receive all wages in full when due and payable in accordance with California law.

61.     As a result of the aforementioned specific actions, Plaintiffs assert that Defendants had in existence a consistent and uniform policy of failing to pay Plaintiffs and the Proposed Class all compensation owed immediately upon termination in accordance with California law.

62.     Plaintiffs and Proposed Class are informed and believe, and thereon allege, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professional, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.  Plaintiffs and Proposed Class are informed and believe, and thereon allege, that at all times during the Class Period, Defendants knew or should have known that they had a duty to compensate

Plaintiffs and Proposed Class, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly and intentionally failed to do so, and falsely represented to Plaintiffs and Proposed Class that they were properly denied wages, all in order to increase Defendants' profits.

63.    Plaintiffs and the Proposed Class are informed and believe, and thereon allege that Defendants knew or should have known that Plaintiffs and Proposed Class were entitled to receive certain wages for all work done by them, and that they were not receiving wages for such work.

64.    Defendants knew or should have known that, throughout the Class Period, Plaintiffs and Proposed Class were performing work as alleged throughout this Complaint, that Plaintiffs and Proposed Class were entitled to the payment of wages for such work and that Plaintiff and Proposed Class were in fact receiving no wages for such work.  Moreover, Defendants knew or should have known that they were required to document the time involved in the performance of such work, maintain a written record of such time, include such time and corresponding wage rates for such time in wage statements as required in Labor Code section 226, calculate gross and net wages for such time and include such calculates in the wage statement required by Labor Code section 226.  Defendants further knew or should have known that they were required to maintain written records of wages earned for such time, pay wages to Plaintiffs and Proposed Class for such time and distribute a wage statement to them, including references to such time and wages earned therefor.  Nevertheless, throughout the Class Period Defendants repeatedly, as a matter of policy applied uniformly to all Proposed Class, failed and refused to record such time and the wages owed thereof; maintain records of such time and the gross and net wages earned for such time in the wage statements distributed to Plaintiffs and Proposed Class; and pay wages to Plaintiffs and the Class Members for such time.

65.    Plaintiffs and Proposed Class bring this action pursuant to the Labor Code, 8 CCR section 11040 and the Wage Order seeking unpaid compensation, penalties, attorneys' fees and costs, injunctive and other equitable relief.

66.     Plaintiffs bring this action pursuant to Business & Professions Code sections 17200-17208, seeking injunctive relief, restitution, and disgorgement of all benefits Defendants enjoyed from their failure to provide hourly wages.

**V.**

**CLASS ACTION ALLEGATIONS**

67.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated as a Class Action pursuant to Federal Rule of Civil Procedure, Rule 23.

68.     Plaintiffs initially delineate the subclasses as follows:

Six (6) Month Subclass: All persons who are employed or have been employed by PG&E as Customer Service Representative I personnel who had greater than six (6) months of directly related clerical job experience, but were hired at the starting rate for Customer Service Representatives.

One (1) Year Subclass: All persons who are employed or have been employed by PG&E as Customer Service Representative I personnel who had greater than one (1) year of directly related clerical job experience, but were hired at the starting rate for Customer Service Representatives.

Eighteen (18) Month Subclass: All persons who are employed or have been employed by PG&E as Customer Service Representative I personnel who had greater than eighteen (18) months of directly related clerical job experience, but were hired at the starting rate for Customer Service Representatives.

Two (2) Year Subclass: All person who are employed or have been employed by PG&E as Customer Service Representative I personnel who had greater than two (2) years of directly related clerical job experience, but were hired at the starting rate for Customer Service Representatives.

Plaintiffs reserve the right to amend or modify the Subclass descriptions with greater specificity or further division into subclasses or limitation to particular issues.  Collectively, the preceding Subclasses are referred to herein as "Proposed Class."

**A.    Numerosity:**

69.     The members of the Proposed Class are so numerous that joinder of all of the members of the Proposed Class is impracticable. While the precise number of Proposed Class Members has not been determined at this time, Plaintiff is informed and believes that Defendant currently employs, and during the relevant time periods employed over 900 members of the Proposed Class at any given time.

70.     Plaintiffs allege that Defendant's employment records would provide information as to the number and location of all Proposed Class members. Joinder of all members of the Proposed Class is not practicable.

**B.     Commonality and Predominance:**

71.     There are questions of law and fact common to the Proposed Class that predominate over any questions affecting only individual Proposed Class Members. The common questions of law and fact include, without limitation:

a.     Whether Defendant has or at the relevant time periods had a policy or practice of misclassifying Plaintiffs and Proposed Class as Customer Service Representative I personnel with less than 6 months of experience, and so hiring them at the starting rate for the Customer Service Representative I position where Plaintiffs and Proposed Class had greater than six (6) months, one (1) year, eighteen (18) months or two (2) years of prior "directly related clerical job experience."

b.     Whether Defendant had a policy or practice of failing to pay all wages owed to Plaintiffs and Proposed Class as required by Labor Code Section 204(a).

c.     Whether Defendant had a policy or practice of failing to pay all wages owed to Proposed Class that was either terminated or had resigned as required by Labor Code Section 203.

d.     Whether Defendant breached its contract with Plaintiff and Proposed Class members when Defendant hired Plaintiff and Proposed Class members at the starting rate of Customer Service Representative I personnel.

e.     Whether Defendant breached its contract with Plaintiff and Proposed Class members when it announced it would review Plaintiff and Proposed Class members' resumes and award settlement payouts to misclassified personnel who were paid the starting wage for Customer Service Representative I and then subsequently failed to do so in November and December 2014.

f.     Whether Defendant subsequently continued to breach its contract with Plaintiff and Proposed Class members when it again announced it would review Plaintiff and

Proposed Class members' resumes and award settlement payouts to misclassified personnel who were paid the starting wage for Customer Service Representative I and then again subsequently failed to do so in April and May 2015.

g.      Whether Defendant, in stating that it would pay Customer Service Representative I personnel $23.88 on its website, made that promise with no intent to fulfill it.

h.      Whether Defendant had a policy or practice of intentionally falsely advertising on its website that it would pay Customer Service Representative I personnel $23.88.

i.      Whether Defendant promised Plaintiff and Proposed Class members that they, as Customer Service Representative I personnel, would receive settlement payouts as a result of their misclassification with no intent to fulfill that promise.

**C.    Typicality:**

72.      The claims of Plaintiffs are typical of the claims of the Proposed Class. Plaintiffs and all members of the Proposed Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes alleged herein.

**D.    Adequacy of Representation:**

73.      Plaintiffs will fairly and adequately represent and protect the interest of the members of the Proposed Class. Counsel who represent Plaintiffs and the Proposed Class are competent and experienced in litigating large employment class actions such as this.

**E.    Superiority:**

74.      A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Proposed Class Members is not practicable. And questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class. Each member of the Proposed Classes has been damaged and is entitled to recovery by reason of Defendant's breach of contract, illegal policy and/or practice of failing to pay Plaintiffs the wage they are owed, and its fraudulent promises it had no intent to perform.

75.     Class action treatment will allow those similarly situated person to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VI.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Breach of Contract)

76.     Plaintiffs, on behalf of themselves and the Proposed Class, reallege and incorporate by reference all previous paragraphs.

77.     At all times material herein, Plaintiffs and all other similarly situated individuals agreed to work for Defendant. Defendant agreed to pay them wages based on the terms of the IBEW Collective Bargaining Agreement and to comply with California's Labor Code as basic terms of their employment. Plaintiffs performed their obligations under such contracts which entitled them to seek enforcement of the contract.

78.     As alleged herein and within the applicable statutes of limitations with respect to the enforcement of the contracts, Defendant breached these agreements by failing to provide Plaintiffs with all the wages they were due based on their "directly related clerical job experience."

79.     Defendant has also breached its contract in failing to fulfill its written promise to Plaintiffs and Proposed Class to award those misclassified Customer Service Representative I personnel with settlement payouts arising from their misclassification as employees without the requisite "directly related clerical job experience.

80.     After promising once to award settlement payouts to misclassified Customer Service Representative I personnel, Defendant once again breached its contract with Plaintiffs and Proposed Class by once again going through its uneven and arbitrary process of perusing Plaintiffs and Proposed Class's resumes and still not awarding Plaintiffs and Proposed Class the settlement payouts and raises they are owed.

81.   As a result of Defendant's conduct that has resulted in some employees with comparable experience receiving settlement payouts, Plaintiffs and Proposed Class have been harmed by the withholding of their wages rightfully owed and earned. In addition, Plaintiffs and Proposed Class have suffered emotional distress and financial hardship due to Defendant's withholding of their rightfully owed and earned wages.

82.   Within the applicable time period prior to the filing of this complaint up through and including the present date through adjudication, Defendant's conduct as alleged herein has injured Plaintiffs and all similarly situated individuals by depriving them of the benefit of their bargain: i.e., all wages due as a result of their employment. Plaintiffs and all other similarly situated individuals are entitled to damages in the form of unpaid wages for Defendant's breach of contract as provided by the applicable law of California.

83.   Defendant also breach the duty of good faith and fair dealing by making policies and using practices and procedures which resulted in its failure to pay its employees all wages when due under the IBEW Collective Bargaining Agreement.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

84.   Plaintiffs, on behalf of themselves and the Proposed Class reallege and incorporate by reference all previous paragraphs.

85.   Implied in the parties contractual relationship was and is a covenant of good faith and fair dealing wherein PG&E coveted that they would, in good faith, and in the exercise of fair dealing, deal with the Plaintiffs and the Proposed Class fairly and honestly.  This implied covenant requires that PG&E to perform all acts necessary to effectuate the contract between the parties and to do nothing to impair, interfere with, hinder, or potentially injure the rights of the Plaintiffs and the Proposed class to receive the benefit of said contract.

86.   The Plaintiffs and the Proposed Class have performed all conditions, covenants, and promises imposed upon it under the terms of the IBEW Collective Bargaining Agreement, with the exception of those conditions, covenants, and promises that Plaintiffs and the Proposed Class were prevented or excused from performing by PG&E.

87.     Specifically, Plaintiffs and the Proposed Class have performed all duties required of Customer Service Representative I personnel under the IBEW Collective Bargaining Agreement.

88.     PG&E, however, breached the covenant of good faith and fair dealing inherent in the IBEW Collective Bargaining Agreement, and unfairly interfered with the Plaintiffs and the Proposed Class's right to receive benefits under the IBEW Collective Bargaining Agreement by, *inter alia*, (A) representing in the job application and hiring process that a Customer Service Representative I personnel would be paid an hourly wage of $23.88 then once offered the job given a take it or leave it hourly wage of $18.36; (B) not adjusting hourly wage of those Customer Service Representative I personnel with directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement; (C) promising to award settlement payouts to misclassified Customer Service Representative I personnel in November and December 2014 and then failing to do so; and (D) preselecting which Customer Service Representative I personnel it would award the settlement payout to based on a predetermined dollar amount it would altogether award based on the misclassification of its employees.

89.     As a direct and proximate result of the foregoing, the Plaintiffs and Proposed Class have suffered and will continue to suffer damages in an amount in excess of the jurisdictional minimum of this Court and according to proof at trial.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

90.     Plaintiffs, on behalf of themselves and the Proposed Class reallege and incorporate by reference all previous paragraphs.

91.     Declaratory relief is appropriate under California Code of Civil Procedure section 1060.

92.     An actual controversy has arisen and now exists between Plaintiffs the Proposed Class and Defendants concerning their respective rights and duties with respect to the IBEW Collective Bargaining Agreement.

93.     Specifically, Plaintiffs and the Proposed Class claim that Defendant is required to adjust the hourly wage of those Customer Service Representative I personnel with directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement. Defendant disagrees and contends that it has already adjusted those Customer Service Representative I personnel with directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement

94.     Therefore, Plaintiff and Proposed Class request a judicial determination of its rights and duties with respect to IBEW Collective Bargaining Agreement and, including a declaration that Defendant is required to adjust the hourly wage of those Customer Service Representative I personnel with directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement

95.     Such declaration is necessary and appropriate at this time because the Plaintiffs and the Proposed Class are not being paid all wages due and owing to them, and Plaintiffs and the Proposed Class will be irreparably injured, and will continue to suffer irreparable injury until such time as such declaration is made.

## FOURTH CAUSE OF ACTION

### (Failure to Pay Wages in Violation of Labor Code § 204)

96.     Plaintiffs, on behalf of themselves and the Proposed Class, reallege and incorporate y reference all previous paragraphs

97.     Labor Code section 204 requires an employer to pay its employees all wages earned by any person in any employment twice during each calendar month, on days designated in advance by the employer as the regular paydays.

98.     Plaintiffs and the Proposed Class were forced to work on a regular and consistent basis at a wage that was less than their "directly related clerical experience" called for as Customer Service Representative I personnel under the IBEW Collective Bargaining Agreement.

99.     During the Class Period and continuing to present, Defendant failed to pay Plaintiffs and Proposed Class wages for all hours worked.

100. During the Class Period and continuing to present, Defendant failed to pay Plaintiffs and Proposed Class wages earned and therefore violated Labor Code section 204.

101. Plaintiff and Proposed Class are entitled to recover all damages, penalties and other remedies available for violation of Labor Code section 204.

## FIFTH CAUSE OF ACTION

### (Failure and Refusal to Pay Agreed Wages)

### (California Labor Code §§ 201, 202, 204, 216, 218, 221, 223, 1194, 1198; the Wage Order)

102. Plaintiffs and Proposed Class incorporate by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

103. Labor Code sections 201, 202, 203, 204, 216, 218, 221, 223, 1194 and 1198, together with the Wage Order and the common law, provide that employees have an immediate and vested right to receive agreed wages for work they were engaged, suffered and permitted to perform.

104. Throughout the Class Period, as a result of uniform policies maintained and enforced by Defendants, the object and/or foreseeable consequence of which were to deny such wages to Plaintiffs and the Proposed Class, Defendants employed Plaintiffs and Proposed Class at agreed wages and refused to pay such wages to Plaintiffs and Proposed Class for all hours they worked by a multitude of unlawful practices.

105. Defendants at all times knew or had reason to know that Plaintiffs and the Proposed Class were performing the aforementioned work without pay and that the practices referenced above deprived Plaintiffs and the Proposed Class of wages for work performed by them.

106. At all times herein alleged, Labor Code section 223 provided, in relevant part: "where any … contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designed by … contract." At all times herein alleged, Plaintiffs and Defendants were parties to an employment contract pursuant to which they had agreed Plaintiffs were to be paid a designated wage scale, which included but was not limited to the payment of wages for each hour worked as required

by the Labor Code and the Wage Order.  By repeatedly and consistently failing to pay regular wages at the agreed wage scale as required by the Labor Code and the Wage Order, as elsewhere alleged herein, Defendants violated Labor Code section 223, depriving Plaintiffs and Proposed Class payment of wages according to the agreed wage scale.

107.   Pursuant to Labor Code section 216, Defendants are guilty of a misdemeanor for willfully refusing "to pay wages due and payable after demand has been made."

108.   Defendants continually failed and refused to pay to Plaintiffs and Proposed Class all wages earned, despite demands being made.

109.   Pursuant to Labor Code section 225.5, an employer who unlawfully withholds wages due to an employee in violation of section 216 shall be subject to a civil penalty.  One hundred dollars ($100) is assessed for the initial violation for each failure to pay each employee, and two hundred dollars ($200) for each subsequent violation, in addition to 25 percent of the amount unlawfully withheld.

110.   As a direct and proximate result of Defendants' willful refusal to pay all wages due to Plaintiffs and Proposed Class, Defendants are liable for wages owing and unpaid, with interest thereon, and for penalties under Labor Code section 225.5.

111.   WHEREFORE, Plaintiffs and Proposed Class request relief as herein prayed for.

### SIXTH CAUSE OF ACTION

**(Violation of Labor Code Section 216)**

112.   Plaintiffs and Proposed Class hereby incorporate the preceding paragraphs of this Complaint as if fully alleged herein.

113.   Pursuant to Labor Code section 216, Defendants are guilty of a misdemeanor for willfully refusing "to pay wages due and payable after demand has been made."

114.   Defendants continually shorted Plaintiffs and Proposed Class and refused to pay them all their wages earned despite demands being made.

115.   Pursuant to Labor Code section 225.5, an employer who unlawfully withholds wages due to an employee in violation of section 216 shall be subject to a civil penalty.  One

hundred dollars ($100) is assessed for the initial violation for each failure to pay each employee, and two hundred dollars ($200) for each subsequent violation, in addition to 25 percent of the amount unlawfully withheld.

116.    As a direct and proximate result of Defendants' willful refusal to pay all wages due to Plaintiffs and Proposed Class, Defendants are liable for penalties under California Labor Code section 225.5.

117.    WHEREFORE, Plaintiffs and Proposed Class request relief as described below.

## SEVENTH CAUSE OF ACTION

### (Failure to Pay Wages in Violation of Labor Code Sections 201, 202 and 203)

118.    Plaintiffs, on behalf of themselves and the Proposed Class, reallege and incorporate by reference all previous paragraphs.

119.    Pursuant to Labor code section 201 and 202, if an employer discharges and employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

120.    Plaintiffs and Proposed Class members have separated from employment with Defendants without being paid wages due to them within the time required by Labor Code sections 201 and 202.

121.    During the relevant time period, Defendant's intentionally and willfully failed to pay Plaintiffs and other class members their wages, earned and unpaid, within seventy-two (72) hours of Plaintiff and Proposed Class members leaving Defendant's employ.

122.    Pursuant to Labor Code section 203, if an employer willfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until n action is commenced; but the wages shall not continue for more than thirty (30) days.

123.    Failure to pay wages, as alleged above, was willful in that Defendant knew wages to be due based on the Customer Service Representative I personnel's "directly related clerical job experience' but failed to pay them, thus entitled Proposed Class members to penalties under Labor Code section 203, which provides that an employee's wages shall continue as a penalties until paid for a period of up to thirty (30) days from the time when they were due

124.    Defendant has failed to pay Proposed Class members a sum certain at the time of termination or within seventy-two (72) hours of their resignation, and have failed to pay those sums for thirty (30) days thereafter. Pursuant to Labor Code section 203, members of the Proposed Class who were terminated or resigned as Customer Service Representative I personnel are is entitled to a penalty in the amount of Proposed Class members' daily wage multiplied by thirty (30) days together with interest thereon and reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

**(Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions – California Labor Code Sections 226(a), 1174 and 1175; the Wage Order)**

125.    Plaintiffs and Proposed Class hereby incorporate the preceding paragraphs of this Complaint as if fully alleged herein.

126.    California Labor Code section 226(a) and the Wage Order requires Defendants to itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by Plaintiffs and Proposed Class  and keep the records on file at the place of employment or at a central location within the State of California.  Defendants have knowingly and intentionally failed to comply with California Labor Code section 226(a) and the Wage Order with respect to wage statements they have provided to Plaintiffs and Proposed Class.

127.    California Labor Code section 1174 and the Wage Order require Defendants to maintain and preserve, at the place of employment or at a central location within the State of California, among other items, accurate records showing the names and addresses of all

employees employed, payroll records accurately showing the hours worked daily and the wages paid to its employees.  Defendants have knowingly and intentionally failed to comply with these requirements in violation of California Labor Code sections 1174 and 1175 and the Wage Order.

128.   California Labor Code section 226(a) and the Wage Order provides that every employer shall, semimonthly or at the time of each payment of wages, furnish each of its employees an accurate itemized statement in writing showing gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and the employee's social security number (or an employee identification number), the name and address of the legal entity that is the employer and all applicable hourly rates in effect during the pay period and the corresponding numbers of hours worked at each hourly rate by the employee.  California Labor Code section 226(a) mandates that deductions made from payments of wages shall be recorded in ink, properly dated and a copy of the statement or a record of deductions to be kept on file by the employer for at least three years.  Moreover, the Wage Order requires Defendants to maintain time records for each employee showing, including but not limited to, when the employee begins and ends each work period, meal periods, and total daily hours worked in itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and the Proposed Class.

129.   During the Class Period, Defendants have regularly and consistently, knowingly and intentionally, failed to provide Plaintiffs and Proposed Class with complete and accurate wage statements.  The deficiencies include, among other things, the failure to list all applicable hourly rates, the failure to include the inclusive dates for the period worked by Plaintiffs and the Proposed Class alleged herein, and the failure to accurately report the gross and net earnings of the Plaintiffs and Proposed Class.

130.   California Labor Code section 1174 and the Wage Order require Defendants to maintain and preserve, at the place of employment or a central location within the state of California, among other items, accurate records showing the names and addresses of all

employees employed, payroll records accurately showing the hours worked daily and the wages paid to their employees. Defendants have knowingly and intentionally failed to comply with these requirements in violation of Labor Code sections 1174 and 1175 and the Wage Order.

131.    Labor Code section 226(a) and the Wage Order provide that every employer shall, semimonthly or at the time of each payment of wages, furnish each of its employees an accurate itemized statement in writing showing gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and the employee's social security number (or an employee identification number), the name and address of the legal entity that is the employer and all applicable hourly rates in effect during the pay period and the corresponding numbers of hours worked at each hourly rate by the employee. Labor Code section 226(a) mandates that deductions made from payments of wages shall be recorded in ink, properly dated and a copy of the statement or a record of deductions to be kept on file by the employer for at least three years. Moreover, the Wage Order requires Defendants to maintain time records for each employee showing, including but not limited to, when the employee begins and ends each work period, and total daily hours worked in itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and Proposed class.

132.    Throughout the Class Period Defendants have knowingly and intentionally failed to provide Plaintiffs and Proposed Class with complete and accurate wage statements. The deficiencies include, among other things, failure to include complete and accurate information on the following: (1) gross wages earned; (2) all deductions from Plaintiffs and Proposed Class' wages; (3) Plaintiffs and Proposed Class' net wages earned; (4) the inclusive dates of the period for which Plaintiffs and Proposed Class were paid; (5) Plaintiffs and Proposed Class' names and the last four digits of their social security number or an employee identification number other than a social security number; (6) the name and address of the legal entity that is the employer; and (7) all applicable hourly rates in effect during the pay period

and the corresponding number of hours worked at each hourly rate by the Plaintiffs and Proposed Class.

133.    As a result of Defendants' violations of California Labor Code sections 226(a), 1174 and 1175, as well as the Wage Order, Plaintiffs and Proposed Class have suffered injury and damage to their statutorily-protected rights.  These injuries and damages include, but are not limited to, the denial of their legal right to receive and the protected interest in receiving accurate, itemized wage statements under California Labor Code section 226(a).  Moreover, the inaccurate and incomplete wage statements provided by Defendants deceived Plaintiffs and Proposed Class about the wages and other compensation to which they were entitled and deprived them of such wages and compensation.  As a further result of Defendants' failure to provide Plaintiffs and Proposed Class with accurate wage statement in accordance with California Labor Code section 226 and to keep accurate time records as required by the Wage Order, Plaintiffs and Proposed Class have suffered injuries and are entitled to penalties under California Labor Code section 226 and California Labor Code section 226.3 which states that any employer who violates California Labor Code section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation.  The civil penalty provided for in this section is in addition to any other penalty provided by law, in an amount to be proven at trial.  The injuries suffered by Plaintiffs and Proposed Class include, but are not limited to, having been, and continuing to be, forced to conduct investigations and perform mathematical computations in an attempt to reconstruct their time records; the inability to reconstruct their time records; the inability to discern the amount of wages they had earned and/or the applicable wage rate; the inability to determine the number of hours they had worked; the inability to determine whether they were paid all wages due for work they performed; the inability to determine the amount of wages owing and unpaid; and having been, and continuing to be, forced to hire attorneys and initiate a lawsuit in order to ascertain the aforementioned information.

///

///

134.   Plaintiffs and Proposed Class are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding $4,000.00 per employee.

135.   Pursuant to California Labor Code section 226(e), each employee suffering injury as a result of knowing and intentional failure by an employer to comply with California Labor Code section 226(a) is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100.00 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00, and is entitled to an award of costs and reasonable attorneys' fees.  Moreover, an employee is entitled under the California Labor Code section 226(g) to injunctive relief to ensure compliance with California Labor Code section 226 and is entitled to an award of costs and reasonable attorneys' fees.

136.   Pursuant to California Labor Code section 2699(f) and (g), Plaintiffs and Proposed Class, as well as all aggrieved employees, are entitled to recover civil penalties in the amount of $100.00 for each aggrieved employee per pay period for the initial violation and $200.00 for each aggrieved employee per pay period for each subsequent violation, plus costs and attorneys' fees, for violations of Labor Code section 226.

137.   WHEREFORE, Plaintiffs and Proposed Class request relief as hereinafter prayed for.

## NINTH CAUSE OF ACTION

### (Promissory Fraud in Violation of California Civil Code § 1572(4))

138.   Plaintiffs, on behalf of themselves and the Proposed Class, reallege and incorporate by reference all previous paragraphs.

139.   In November and December 2014, Defendant, via email, notified all Plaintiffs that their resumes were to be reviewed and that those Customer Service Representative I personnel with prior "directly related clerical job experience" would receive settlement payouts. Defendant made identical, material misrepresentations to each Plaintiff and Proposed Class member.

///

140.    Upon information and belief, Defendant made this representation to Plaintiffs and the Proposed class knowing that it had already preselected which Customer Service Representative I personnel it would award the settlement payout to based on a predetermined dollar amount it would altogether award based on the misclassification of its employees

141.    In justifiable reliance on Defendants identical and material misrepresentation, Plaintiffs and Proposed Class members, and each of them, were induced to, and did continue working as Customer Service Representative I's. Additionally, Plaintiffs and Proposed Class members, and each of them, were induced to submit resume's to PG&E so that they could be reviewed for directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement.

142.    As a direct and proximate result of the foregoing, the Plaintiffs and Proposed Class have suffered and will continue to suffer damages in an amount in excess of the jurisdictional minimum of this Court and according to proof at trial.

## TENTH CAUSE OF ACTION

### (Promissory Estoppel)

143.    Plaintiffs, on behalf of themselves and the Proposed Class, reallege and incorporate by reference all previous paragraphs.

144.    Defendant made a clear promise to Plaintiffs and Proposed Class that it would pay them the wages they were due after the November 2013 grievance clarified that Defendants had misclassified its employees. Defendant's agent, Scott Sanford, promised Plaintiffs and Proposed Class that Defendant would review their resumes to determine their eligibility for the settlement payout in December 2014.

145.    Plaintiffs and Proposed Class members still employed at that time justifiably and actually relied on Defendant's representations by remaining at their jobs and submitting resumes to be reviewed for directly related clerical job experience in accordance with the IBEW Collective Bargaining Agreement. In addition, Plaintiffs and Proposed Class Members, based on PG&E's clear promise that those who had directly related clerical job experience

///

would receive settlements, were induced to not submit grievances under the IBEW Collective Bargaining Agreement.

146. As a direct and proximate result of the foregoing, the Plaintiffs and Proposed Class have suffered and will continue to suffer damages in an amount in excess of the jurisdictional minimum of this Court and according to proof at trial.

**ELEVENTH CAUSE OF ACTION**

**(Violation of Business and Professions Code § 17200 et seq.)**

147. Plaintiffs, on behalf of themselves and the Proposed Class reallege and incorporate by reference all previous paragraphs.

148. This is a Class Action for Unfair Business Practices. Plaintiffs on behalf of themselves, on behalf of the general public, and on behalf of the Proposed Class, bring this claim pursuant to Business & Professions Code section 17200, et seq. The conduct of Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs, the general public, and the Proposed Class. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

149. Plaintiffs and Proposed Class are "persons" within the meaning of Business & Professions Code section 17204, and therefore have standing to bring this cause of action for restitution and other appropriate equitable relief.

150. Business & Professions Code section 17200, et seq. prohibits unlawful and unfair business practices. Business & Professions Code section 17200 applies to unfair competition, which is to be construed broadly to enjoin wrongful business conduct towards public and competitors.

151. Business & Professions Code section 17200 prohibits "unfair, deceptive, untrue or misleading advertising." Here, Defendant advertised the position for Customer Service Representative I on its website and represented to Plaintiff, Proposed Class members, and the public at large that it would pay those individuals whom it hired for that position $23.88.

///

Defendant's activities as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200 et seq.

152. A violation of California Business and Professions Code section 17200 et seq., may be predicated on the violation of any state of federal law. As described herein, Defendant violated California Labor Code sections 201, 202, 203, and 204, and has engaged in other acts of unlawful competition.

153. Specifically, Defendant had no intention to pay Customer Service Representative I personnel $23.88 and subsequently reneged on that advertisement at the time of making Plaintiff and Propose Class members their offers of employment.

154. As a result of Defendant's intentional actions, Plaintiff, Proposed Class members, and all applicants, numbering in the thousands, relied on Defendant's advertisement and applied for the Customer Service Representative I position.

155. California's wage and hour laws express fundamental public policies. Providing employees with proper wages and compensation are fundamental public policies of this State and of the United States.  Labor Code section 90.5(a) articulates the public policies of this State to enforce vigorously minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards.

156. Defendant has violated statutes and public policies as alleged herein.  Through the conduct alleged in this Complaint, Defendant has acted contrary to these public policies, has violated specific provisions of the Labor Code, and has engaged in other unlawful and unfair business practices in violation of Business & Profession Code section 17200, et seq., depriving Plaintiffs, and all persons similarly situated, and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

///

///

157.    Defendant, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care, should have known that the conduct was unlawful.  As such it is a violation of Section 17200 et seq. of the Business & Professions Code.

158.    As an additional proximate result of the above-mentioned acts of Defendant's unfair business practices, Defendant has reaped unfair benefits and improper profits at the expense of Plaintiffs, the Proposed Class, and members of the public and Plaintiffs and others similarly situated have been damaged in a sum as may be proven.

159.    Pursuant to the Business & Professions Code, Plaintiffs and members of the Proposed Class are entitled to restitution and disgorgement of profits by Defendant based on Defendants' failure to pay all wages and overtime owed to Plaintiffs.

160.    Pursuant to California Business and Professions Code section 17200 et seq., injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair business practices as alleged herein.  Plaintiff is informed and believes that defendants have committed and will continue to commit the above-described unlawful acts unless restrained or enjoined by this Court.  Unless relief prayed for below is granted, a multiplicity of actions will result. Plaintiff and the Proposed Class have no plain, speedy, or adequate remedy at law, in that pecuniary compensation alone would not afford adequate and complete relief.  The above-described acts will cause great and irreparable harm to Plaintiff and the Proposed Class unless Defendant is restrained from committing further illegal acts.

**V.**

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs, their behalf and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

1.    That this action be certified as a class action and that each subclass identified herein be certified;

2.    That Plaintiffs Becky Greer, Timothy C. Budnik, Rosario Saenz and Ian Carty be appointed as the representatives of all the Proposed Class and subclasses;

3.    That counsel for Plaintiffs be appointed as class counsel;

4.      For general and special damages according to proof;

5.      For a declaration that Defendant is required to pay Plaintiffs and the Proposed Class backpay in amounts subject to proof at trial;

6.      For actual, consequential and incidental losses and damages, according to proof;

7.      For compensatory damages in the amount of unpaid wages and/or overtime not paid to Plaintiffs and each other Proposed Class Member from at least four (4) years prior to the filing of this action to the present as may be proven;

8.      For compensatory damages in the amount of Plaintiffs' and each Proposed Class Members' hourly wage for each meal period/rest period missed or taken late during the liability period as may be proven;

9.      For all civil penalties and reasonable attorneys' fees and costs of suit pursuant to Labor Code sections 210, 211, 218.5, 558, 1194 and 1197.1;

10.     For statutory penalties pursuant to California Labor Code section 203 for Plaintiffs and the Proposed Class who have left Defendant's employ equal to their daily wage times thirty (30) days;

11.     For restitution of unpaid wages and other monies wrongfully withheld and retained by Defendant to Plaintiff and the Proposed Class and prejudgment interest from the day such amount were due and payable;

12.     For reasonable attorneys' fees and costs of suit uncured herein that Plaintiff and other class members are entitled to recover under California Code of Civil Procedure section 1021.5;

13.     For injunctive relief to ensure compliance with this section, pursuant to California Business and Professions Code section 17200 et seq.

14.     An award of prejudgment and post judgment interest;

15.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 510, 1194, 1197 and 1198, and the Wage Order by willfully failing to pay minimum wages to Plaintiffs and Proposed Class;

///

16.     For all civil penalties and reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code sections 218.5, 218.6, 558, 1194, 1194.2, 1197, and 1199;

17.     That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code section 226(a) and the Wage Order as to Plaintiffs and Proposed Class and that Defendants knowingly and intentionally failed to provide accurate itemized wage statements to Plaintiffs and Proposed Class.

18.     For statutory penalties pursuant to California Labor Code section 226(e);

19.     For injunctive relief to ensure compliance with Labor Code section 226(a), pursuant to California Labor Code section 226(g);

20.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201, 201.3, 202, 203, 204 and 1198 and the Wage Order by willfully failing to pay all compensation owed at the time of Plaintiffs' and Proposed Class' termination of employment and, while Plaintiff and Proposed Class were employed by Defendants, willfully failing to timely pay all compensation owed;

21.     For statutory wage penalties in favor of Plaintiff and Proposed Class pursuant to California Labor Code sections 203, 204, and 210;

22.     That the Court declare, adjudge and decree that Defendants violated Business & Professions Code section 17200, et seq., as a consequence of their failure to pay agreed wages and compensation for work, failure to pay at least minimum wage, failure to provide accurate wage statements, failure to timely pay wages to employees, failure to timely pay wages to employees upon resignation or termination, failure to pay all wages earned, failure to pay reporting time premiums, and failure to reimburse necessary expenditures or losses incurred in direct consequence of the discharge of employees' duties.

23.     For restitution of unpaid wages to Plaintiffs and Proposed Class, and for prejudgment interest from the day such amounts were due and payable;

///

///

24.     For the appointment of a Receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violation of Business & Professions Code section 17200, et seq.;

25.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to Code of Civil Procedure section 1021.5;

26.     For injunctive relief to ensure compliance with this section, pursuant to Business & Professions Code section 17200, et seq.; and

27.     Such other and further relief as this Court may deem proper and just.

## VI.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.


DATED: July 10, 2015                    WANGER JONES HELSLEY PC


                                        By:  /s/ Patrick D. Toole
                                            Michael S. Helsley,
                                            Patrick D. Toole,
                                            Dylan J. Crosby
                                            Attorneys for Plaintiffs